Thank you, Your Honors. And may it please the Court, Cleveland Welton for the Attorney General. The District Court's injunction should be set aside for three principal reasons. The plaintiffs don't have standing. This Court's decision in Brokamp squarely forecloses their First Amendment theory, and the unauthorized practice of law statutes do not, excuse me, readily satisfy any constitutional test. I'll start with the merits because Brokamp really squarely rejects the plaintiff's theory that a professional license requirement triggers strict scrutiny under the First Amendment. Brokamp holds that a regulation of who can render professional advice, having a particular purpose, focus, and circumstance, does not involve the kind of content discrimination with which the First Amendment is concerned. A license requirement draws a distinction between those speakers who are qualified to render professional advice and those speakers who are not so qualified. Here- So if we agree with you on Brokamp, which was decided well after the District Court's decision, then we'd remand and have the District Court take a crack at this under intermediate scrutiny. That's what you're asking for. Is that right? That's the bare minimum relief we're asking for, yes, Your Honor. Okay. Well, what, I mean, what else? Do you think that we could do that here? I undertake that- Do you think we can engage in the intermediate scrutiny test and analysis here, or do we need to send it back? I think you can engage in it here. And first, I just want to set aside one quick point, which I think that under Jacobian-Meyers, the prior decision, rational basis review should apply because the cost of obtaining a law license or hiring an attorney does not rise to the level of requiring even intermediate scrutiny, but at most intermediate scrutiny applies under Brokamp. And yes, we do think that remanding for application of intermediate scrutiny is the correct bare minimum result. But we do think- Just out of curiosity, why is that the correct one as opposed to, as Judge Sullivan was saying, as opposed to taking on and answering the intermediate scrutiny question ourselves? Is that's, is there any reason why we can't do that? I mean, is it just our choice whether we say, have the district court take the first crack at that issue, or that we take the first and only crack it, at least only unless it goes to a higher court? If you think that additional facts need to be developed under the intermediate scrutiny analysis, then remand might be appropriate. So you tell us why, why are additional, why might additional facts be required? Well, I don't think that any additional facts are required, Your Honor. I think that just looking at the materials that Upsolve themselves put into the record, that that's sufficient to show that we satisfy intermediate scrutiny here, intermediate scrutiny here by prohibiting them from practicing law. And that's so for a number of reasons. The first of which is, it is not disputed that the state has compelling interests in avoiding the, in protecting the public and the courts from the dangers of unethical, incompetent law practice. So that, that's. So is there any difference? Is there any functional or significant difference between this or, or so let's say the question was one involving medical licensing of doctors, if, if an entity said, you know, a lot of people who can't afford medical insurance and can't afford doctors can very much benefit from advice that they would get from non-professionals about how to treat their, their ailments. And we should be allowed, making the same arguments as the, as the plaintiffs are making here, we should be allowed to, to, to help them, help them get through for stuff that they can't afford to pay for under the licensing system. So are there differences between the, between the two questions? If this had arisen in the context of medical licensing as opposed to legal licensing? The only difference I can think of is that sometimes medical licensing involves actual physical practice and not first amendment. But I think the Brokamp case is really on point there. That was a medical, medical form of treatment, mental health counseling, and the court applied intermediate scrutiny and said, no, you have no first amendment right to practice mental health counseling without a license. And I think exactly the same analysis applies here. And if you were to... Isn't it true, isn't it true that a great deal of what, of what the plaintiffs do would be something that one is entitled to do without being a lawyer? If they, if they, if they didn't claim to be giving any legal advice, but they said we're giving practical advice of things like, you don't have to be a lawyer, I don't think, to say to somebody, show up at the hearing, if you get, if you get a notice of a hearing, show up at the hearing, don't just throw up your hands and say, I might as well, I, I don't know what to do in a court of law, I, I won't show up, and if you get a notice that charges you that, that, that says certain things are true, A, B, C, and D are true, read them carefully and, and determine whether they really are true or are they not true, and if they're not true, say so. Tell the judge, this isn't true, that isn't true. I don't think you need, do you need to be a lawyer to, to, to give that kind of advice? I'd probably not, your honor, depend on the particular facts of the case, but I, I do think that what these plaintiffs are doing is distinct from what you're suggesting, and that is. Yeah, but I'm saying, I, I, I know they are, they are advertising themselves as giving some legal advice and perhaps they are, but what I'm asking is, isn't it true that a lot of what they do, they would be, they're entitled to do, a lot of the advice that they're giving is advice that they're entitled to give without, without having a law license? That's absolutely true, your honor. They, they could publish, for example, they could publish the training guide and hand it out to individuals who are interested in learning how to answer these kinds of debt collection lawsuits, and if they just start publishing general information, that is not a, a practice of law. In that sense, they could even be giving legal advice as long as it's not delivered attorney to person to client, if they, if they've published it. Right. They've published an article that contains opinions on what the law demands, what it permits, so forth, that they're allowed to do, right? Exactly right. You're saying that in addition, they could even hand that, that published pamphlet to the client, to the, to the person who's facing the hearing and say, you know, here, read this, it'll, it contains a lot of information that'll be helpful to you. I see no reason why not, your honor. What they can't do is apply their own legal knowledge, judgment, skill, expertise to the facts of a particular case to generate. In, in a person to person context, in a person, because they can do exactly what you just said in a publication. Well, in a publication, they wouldn't be applying it to the particular facts of an individual client's case. Well, they might be applying it to hypothetical facts that, that turn out to be exactly, exactly the facts of this case. Yes, sure. Exactly. But in, in, not in a, in a person to person context, as you're suggesting, your honor, that wouldn't be the practice of law. And so it wouldn't be barred by the statute. The thing that they can't do is give individual advice, individualized advice to particular clients in a one-on-one scenario. So, Mr. Welton, in Brokamp, the court, the panel, assumed that it was speech, not conduct. So what should we be doing, or what should the district court be doing here? Just assuming and then going into the intermediate scrutiny analysis, or do we need to decide whether or not what's being regulated here is speech, as opposed to content? I, I think you can do the same route that the court took in Brokamp, assume that it's speech, not conduct. But why not, I mean, why not address that issue and just decide it once and for all? There, there's no reason why not. I, I think that we're correct on both points. In either way, we get to, at most, intermediate scrutiny. And so we win in this court. I don't think there's any reason why not. It just, it's more straightforward to follow the decision in Brokamp and say, look, this is content neutral. This is not based on discrimination against any particular speech or any viewpoint. This is a regulation of who can practice law. And that, that I think is more straightforward, but we obviously would not object to the court going ahead and saying this is conduct, not speech. All right. And I guess I wanted to just return briefly to, to whether or not this is something we should be doing or whether the district court should be doing. And it's not typically the case that we're deciding preliminary injunctions. And when we do review a preliminary injunction, it's usually with, you know, a standard that includes some degree of deference. And so, is it your view that we don't need to send this back? That we have everything in the record here to decide this issue? I, I think that you certainly can decide the issue. I think the materials that Upsall put in are sufficient to decide the issue in our favor. But if you have any doubt about that, certainly the case should be remanded. The injunction should be vacated and sent back to the district court to make whatever further factual determinations might be necessary. No further questions at all. All right. Well, you've reserved two minutes for rebuttal. We'll now hear from Mr. McNamara. Thank you, Your Honors. And may it please the Court, the State is asking this Court to dissolve a preliminary injunction that for the past two years has allowed the appellees to run a vitally needed volunteer program that consists of nothing but spoken advice. The Court should decline that invitation and allow our program to continue to operate. And I'll start as the State did. Well, I mean, we're going to decline that invitation. But the fact of the matter is that the district court applied the wrong standard under Brokamp. Would you agree with that? I don't think that's right, Your Honor. I don't think Brokamp speaks to this case for three reasons. One is the Court already noted Brokamp assumes away the speech conduct question. The speech conduct question is not. Well, you assume that it is speech. And you're arguing that it is speech. Yes. But the heart of the State's argument in its briefs is that it's conduct, not speech. That argument is not answered by Brokamp. Two, on intermediate scrutiny, Brokamp says that law got intermediate scrutiny because once you are engaged in a conversation with a therapeutic purpose, you could say anything at all and still violate the law. You could do nothing but talk about baseball. And still violate the counselor licensing law. You can't give legal advice by talking about baseball. If the conversation consists entirely about baseball, it is not the unauthorized practice of law. It is only the unauthorized practice of law. As the State describes the law in the district court, and this is 159 of the Joint Appendix, the closer the plaintiff gets to rendering substantive advice on defenses implicated by these forms. Here, unlike in Brokamp, the law isn't triggered by the purpose of a conversation. It's expressly triggered by the content of the conversation. But that's not true. I mean, it's clearly, I mean, there's no distinction made between whether the content was fill out this form by writing yes or fill out this form by writing no. It's not determined by what particular advice. It's just the fact that it's advice concerning the form, right? It's that it's specific advice about the law as opposed to specific advice about something else. This is exactly the distinction the Supreme Court draws in Humanitarian Law Project, where there the law was triggered by expert advice, but was not triggered by ordinary advice. And the Court said that that's a content-based distinction. And it was a content-based distinction where the legal, where the advice there was legal advice, just like the advice we propose to give here. And so we have exactly the same distinction where we're allowed to say borrow less money, be more responsible in the future. We're not allowed to say specifically, this is what I would do in your circumstances. I think you should show up to court and say, you don't owe this money. That's what I would do. So I understand your argument, the implications of it to be that the law that requires a license to practice law and to give legal advice is unconstitutional, that the state simply cannot apply it. And I wonder whether you agree with that, and whether it would be any difference if we were talking about medical advice, if people who, if your position were occupied by somebody who's doing exactly what you do, but talking about giving medical advice and purporting, as you purport to give some legal advice, purporting to give medical advice. Only as applied to pure speech, Your Honor. Only to the extent the law is triggered solely by giving advice. And I think it's important to remember this kind of advice is given every day. Everyone gets medical advice from unlicensed people. Everyone gets legal advice from unlicensed people. The problem here is that we propose to do it in a more formal way where we're providing some training and hoping people are actually getting good advice. But this advice is rampant. And according to the state, it can criminalize all of it by imposing a licensing requirement without any First Amendment scrutiny at all. And I think if we're going to read Brokamp to say that licensing laws are purpose-based and therefore never trigger strict scrutiny, that creates a direct conflict with the Fifth Circuit's decision in Visalign, with the Ninth Circuit's decision in Pacific Coast Horseshoeing School, both of which apply humanitarian law projects in exactly the way we're saying. Now, I don't think we have to read Brokamp that way, because I don't think you can give legal advice by talking about the Mets, or you can have a therapy session. That's your takeaway from Brokamp. It's basically baseball. If you can do something by talking about baseball, then it's not content-based. But if baseball is impossible, then it's content-based. If you don't have to listen to me. It just seems so frivolous to me. I use that example because that's the example the panel chose in its opinions. You can talk about nothing but sports, and it's still a therapy conversation. I don't think that can apply here, because the only way to violate this law is if we actually provide legal advice. If we say the purpose of the conversation is to provide legal advice, but when the person comes in, it turns out they have a problem that's not covered by the guide, we say, oh, man, you should go talk to a lawyer. We don't have any substantive advice about this. And because the content of that conversation is different, even though the purpose was the same, we are not violating the law. If the content of the conversation is, oh, you've been served with a consumer debt lawsuit, let's talk about what these checkboxes mean, and really, you should contest this, because evidence shows that a lot of the time the plaintiff doesn't have the evidence, then we have committed a crime. And the State conceded below that what we're doing for purposes of this motion is the unauthorized practice of law, even though it's very basic advice. But that's the general sort of advice that Judge LaValle is saying you can give in a generic generalized way. Is, look, the evidence shows that in a macro sense, there's rarely enough evidence. The evidence suggests that just showing up is often enough to defeat these claims, right? The evidence shows that, you know, whatever it is that you're talking about, a macro generalized issue, and as Judge LaValle points out, you can do that. You can hand that information out to people. You can share that general advice. That is not what we're talking about, right? We're talking about a one-on-one where you say, oh, I'm looking at your case, and I'm giving you advice. I'm offering you, presumably, expertise, which otherwise it wouldn't be of value, about your case. How isn't that different? So it's absolutely true, Your Honor, that the distinction here is expert advice versus non-expert advice. That's the distinction from humanitarian law project, as recognized by cases like Pacific Coast Horseshoeing. That's what triggers the scrutiny here. But two further points in response. One, the State was free to say in the district court that this actually isn't the unauthorized practice of law. They specifically declined to say that. They said for purposes of this motion, they don't contest that this is the unauthorized practice of law, which is why Judge Pratti's opinion says the prohibition on the unauthorized practice of law could not be broader. In this posture, it covers all of this. Even if the specific advice is just, I think you should go and you should contest this, that's specific enough to trigger the law. But I also think that goes to the tailoring. Under the Supreme Court's decision in McCohen, under this court's decision in Barry, the government needs to have real evidence to explain why it's going to prohibit our speech when there are less restrictive alternatives available. And there are less restrictive alternatives. Yeah, whenever they want to expand on that, please. Absolutely, Your Honor. There are a number of states in the country, as detailed by the amicus brief of the empirical scholars led by Professor Sandifer, where there's a path to legality for exactly this sort of advice. That's true in Utah. That's true, as we saw, after a briefing closed in this case in South Carolina, where a substantially identical program run by the NAACP has been blessed by the State Supreme Court. So in this posture, to survive intermediate scrutiny, New York needs to have record evidence that says those other states are doing it wrong. They are exposing people to grave dangers, and here's the evidence for why we can silence this kind of one-on-one advice. And they don't have that evidence on this record. And I think that matters, particularly because, as the state concedes, we are free to publish whatever we want on the internet. We are free to hand people pamphlets. The only thing we're forbidden from doing is giving people what they need, which is a one-on-one conversation with a human being who has seen a little bit of this before and can talk to them like a person. I will freely concede that people who are savvy and pretty good at the internet can probably find substantially similar information to what our volunteers give on the internet. We're trying to talk to a community that is not necessarily incredibly savvy and able to find information on the internet, and we're trying to talk to them in a way that makes sure they understand, not just by handing them a pamphlet. So the State's interest here is not in preventing misinformation. It's not in making sure people don't get bad advice. All the misinformation in the world is available on the internet. What the State has to justify, and Judge Crotty is very specific about this, the State has to justify silencing this volunteer program, silencing these volunteers giving this kind of advice, which they've been giving for two years now under the protection of the preliminary injunction. My question may be, my question I guess is irrelevant to the issue that your suit places before us and requires us to answer, but out of curiosity, I sort of wonder why your interest, the interest of your organization wouldn't be better served by a very different approach, which is to say, to approach rather than suing to declare a law unconstitutional, if you approach the State licensing authorities and said, look, here's all the value that we can contribute to this. It's pretty clear that if presented in a certain fashion and with certain labels, and for example, by avoiding any claim that we are giving legal advice, we could do all or almost all, or in any event, a very large quantity of what we are doing lawfully. And we would like to work with you to get your guidance as to how we could work with you to get your approval to do these things that would be hugely beneficial without transgressing the law, which largely can be done just by not purporting to be giving legal advice, but simply purporting to give practical experience advice, but could also go a lot further and actually give advice on what the law does and doesn't permit by doing it through a pamphlet that you could even hand personally to the client. I recommend that you read Chapter 3. I recommend that you read this paragraph, all those things. It just seems to me that your interest might be much better served by a more cooperative and less confrontational approach. It's clear that there's a lot of benefit to what you do, and it's clear that a very large percentage of what you do is not forbidden by law. But when you purport to be giving legal advice, that kind of changes the whole picture. I see my time has expired, Your Honor. May I respond? Yes. So a couple of responses, Your Honor. One, the State's consistent position in this case has been that our only remedy lies with the legislature, that this is a creature of statute. That's in this case, because this case is a case in which you challenge the constitutionality of the law. Again, Your Honor, they were free to say it's not clear this is the unauthorized practice of law. You could have exhausted a State remedy. It is clear that it's the unauthorized practice of law if you purport to be giving legal advice to clients. But there is, and this is an important point, Your Honor, there is no disclaimer. Again, on this record, there's no disclaimer we could give. And the training guide is replete with disclaimers that says we are not attorneys, we are not licensed lawyers, we cannot represent you in court, we are just giving you advice. None of those disclaimers are enough to take us outside of the box. And I certainly agree that New York could adopt helpful policy responses to the huge access to justice problem in this country. But thus far, it has declined where other States have said yes. And if the State is going to decline to adopt those policy remedies, which are less speech restrictive than the policy it has, it has to justify those with record evidence. Holding otherwise will create a clear circuit split with cases like Visalign, with cases like Pacific Coast Horseshoeing School. And essentially what there is here, Your Honor, is a split between cases that cite Humanitarian Law Project and cases that don't cite Humanitarian Law Project. Humanitarian Law Project is the controlling speech content case in this area. And what's essentially driving this circuit split is a dispute over whether that continues to control in cases about occupational licensing. The answer is yes. And once the answer is yes, the State has an evidentiary burden that they concede they have not met here. The reply brief asks the Court to remand so they can build a record under intermediate scrutiny. If the record before the Court is not enough to say the law survives scrutiny, that means the preliminary injunction has to stay in place and Judge Prate's decision below should be affirmed. Thank you, Your Honor. Thank you very much, Mr. McNamara. We'll hear from Mr. Welton for two minutes of rebuttal. Thank you, Your Honors. Just a couple of quick points. I want to emphasize again, as Judge LaValle and Judge Merriam both noted, this is not a case about conversations with friends or family. Conversations like that don't constitute the practice of law. So those kinds of situations are not presented here. We're talking about providing detailed legal advice to individual clients as they prepare pleadings that are going to be filed in court. That's the practice of law, and it is rightly prohibited by the unauthorized practice statute. On the question of the level of scrutiny, Judge Sullivan, you're totally correct. The district court applied the wrong standard. The court should at minimum vacate the injunction and remand for application of the right term. Well, Mr. McNamara insists that Brokamp doesn't change anything, that that's a distinguishable case. I guess I'd like to hear your response to that. In which regard, Your Honor? Well, he said that Brokamp really doesn't change the conclusions of the district court because Brokamp was more narrow. The district court was focusing on a range of speech that's distinguishable from here. And I guess I wanted to see if you had a reaction to that. Sure. What Brokamp holds is that when a law is about licensing, it draws distinctions about who is qualified to practice law or who is qualified to practice mental health counseling. It's about the speaker rather than the content of the speech. Statutes like this don't try to suppress individual viewpoints or particular subject matter areas. Many people can speak about the practice of law or can give the same kind of advice that would possibly qualify as the practice of law. The question is not the content of the speech. I think his point, and he's drawing from just really a couple of lines in the opinion, but where it says all that matters for conversations relating to therapy is that it be for a therapeutic purpose. The therapeutic purpose doesn't dictate the particulars of the conversation or doesn't necessarily. And so then there's this line about, you know, you can talk about movies or sports or other things. Here he's saying that the speech is really focused. It's focused on legal advice and, in particular, legal advice related to debt collection. And so he's saying that is content-based in a way that the language in Brokamp was not. The rule in Brokamp is that if you're looking at the purpose, focus, and circumstance of the speech, then that is not a content-based distinction. I think that's quite similar, actually, to the rule in the city of Austin where the distinction was drawn based on the source of the speech. There was a sign ordinance, right? You could distinguish based on where the sign was to determine whether the speech was permitted or not. Here, similarly, we're looking at where the speech is coming from, whether the person delivering the speech is qualified to do so and has a license to do so. So we're looking at the origin of the speech, not at the content. We're not trying to suppress particular content. Lots of people can give legal advice. Lots of people, even, for example, someone in a tavern or a friend, could give advice that's perhaps indistinguishable in substance from the legal advice that the plaintiffs are offering. But if they're not doing it on the basis of purported legal knowledge, judgment, and skill, but they're just saying this is my experience, this is how I think you should fill this out, not legal advice, then that could be the exact same speech that they are offering here, and it would not be covered by the statute. And that's because they're not coming from a place of offering advice based on legal knowledge, judgment, and skill, and they're not coming from a place where they're purporting to be qualified to do this. The question here— And the further qualification is the circumstances in which it's delivered, whether it's delivered in the context of person-to-person advice about particular circumstances of a— Correct, Your Honor. —legal predicament. Exactly, Your Honor. So that was the other point I was going to get to, is that we're in a one-on-one circumstance here where they're providing advice based on the particulars of a given case, and that's what makes this a practice of law as opposed to something else. And the really determinative factor, though, is that the speech is coming from someone who's not licensed and not anything about the content. The State is not trying to suppress speech. The State is not trying to suppress any particular viewpoint. The State is not based this regulation on disagreement with anything that the plaintiffs are saying. We're just saying they need to be licensed in order to do that, or they need to hire someone who has a license in order to offer this advice. That's a longstanding requirement of New York and American law, and it does not violate the First Amendment. We ask the Court to, at minimum, vacate the injunction. Of course, that particular requirement, that it be offered on a person-to-person basis with respect to a particular predicament of the circumstances, that's also true of therapy, isn't it? Correct, Your Honor, yes. That's another parallel to be drawn to Brokamp, which is why another reason that my friend is incorrect, Brokamp is not materially distinguishable from this case. The rule there should apply. The Court should vacate the injunction or reverse it. All right. Well, thank you, both.